UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT SPRINGFIELD

RANDY G. DABNEY,       )
                                  )
      Movant,        )    USDC Case No.  6:23-cv-____
                                    )
      v.                    )
                                    )    USDC Case No.  6:17-cr-03007-1
UNITED STATES OF AMERICA,  )
                                    )    Hon. Roseann A. Ketchmark
      Respondent.      )    United States District Judge

## **MOTION TO FILE OVERSIZE MEMORANDUM OF LAW**

COMES NOW RANDY G. DABNEY, Movant *pro se* in the above styled and numbered cause and respectfully moves this Court, pursuant to Local Rule 7.0 (d), for permission to file the contemporaneously submitted 32-page memorandum of law in support of his motion to vacate.

IN SUPPORT THEREOF, Mr. Dabney would show the Court the following facts and circumstances: The factual and legal complexity of the issues raised does not allow the *pro se* prisoner movant to more concisely present the relevant facts and pertinent argument necessary to adequately meet the standard to obtain relief on the issues which deserves the same.

WHEREFORE, premises considered and for good cause shown, Mr.

Dabney respectfully requests that this Court grant this motion and accept the

contemporaneously submitted memorandum of law for filing.

Respectfully submitted this _3_ day of _October_, 2023.

Mr. Randy G. Dabney, *Pro Se*
No. 17642-045
MCFP Springfield
Post Office Box 4000
Springfield, MO 65801

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT SPRINGFIELD

RANDY G. DABNEY,                    )
                                    )
        Movant,                     )      USDC Case No.   6:23-cv-_____
                                    )
v.                                  )
                                    )      USDC Case No.   6:17-cr-03007-1
UNITED STATES OF AMERICA,           )
                                    )      Hon. Roseann A. Ketchmark
        Respondent.                 )      United States District Judge

---

## *PRO SE* MEMORANDUM OF LAW IN SUPPORT
## OF MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL
## SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255

[Return Date to be Fixed by the Court]

COMES NOW RANDY G. DABNEY, Movant *pro se,* in the above styled

and numbered cause, and respectfully submits this Memorandum of Law in

support of the Motion to Vacate pursuant to 28 U.S.C. §2255, and would show

the Court the following facts, circumstances, and points of law:

# I. Introduction

Mr. Dabney asks this Honorable Court to vacate his conviction and sentence on the basis that his guilty plea was the result of gross misadvice, constituting ineffective assistance. Counsel misadvised Mr. Dabney that by accepting the prosecution's formal plea offer he would limit his sentence exposure to between 14 and 17 years' imprisonment. This grossly under represented Mr. Dabney's true sentence exposure under the plea agreement.

Mr. Dabney's plea was unknowing, unintelligent, and involuntary based on counsel's ineffective assistance in providing this misadvice. But for this misadvice, Mr. Dabney would have persisted in his plea of not guilty and exercised his right to trial by jury. The conviction and sentence resulting from the plea should be vacated and Mr. Dabney returned to the pre-plea stage of proceedings in the criminal case.

Additionally, Mr. Dabney was deprived of the effective assistance of counsel in preparation for and during sentencing by counsel's unilateral decision to submit a document which was prepared for counsel's review and

2

consideration to the U.S. Probation and the prosecution as a "pro se" submission by Mr. Dabney. But for counsel's deficiencies in this regard, Mr. Dabney would have received a third point reduction for acceptance of responsibility and, presumptively, a lesser sentence. Mr. Dabney is entitled to resentencing with the third point off for acceptance as would have occurred but for sentencing counsel's deficient performance in submitting a document prepared for counsel's review to U.S. Probation and the prosecution.

## II. Jurisdiction

Pursuant to 28 U.S.C. §2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed sentence to vacate, set aside, or correct sentence." Mr. Dabney so moves this Court on grounds that his conviction was achieved and his sentence was imposed as a result of proceedings wherein he was denied the effective assistance of counsel.

3

## III. Review Standards

A motion for relief under §2255 follows the procedures established by the "Rules Governing Section 2255 Cases in the United States District Courts" ("Rules"). The text of §2255 states that "[u]nless the motion and the files and records of the case **conclusively** show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[1] Similarly, the Rules dictate that, upon initial consideration by the assigned District Judge, a §2255 motion should be dismissed only "if it **plainly** appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[2] In all other cases, "the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take action the judge may order."[3] The Rules authorize, where appropriate

---

[1]    *28 U.S.C. §2255* (emphasis added).

[2]    *Rule 4(b)* (emphasis added).

[3]    *Id.*

4

and by order of the Court, discovery proceedings, an expansion of the record, and an evidentiary hearing.

Subsequent to the "Preliminary Review" stage set out in Rule 4, the ultimate legal standard for motions brought pursuant to §2255 is prescribed by statute:

> If the court finds that . . . the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant him a new trial or correct the sentence as may appear appropriate.[4]

---

[4] *28 U.S.C. §2255.*

## IV. Grounds for Relief

**A.    Ground One:**
**Mr. Dabney's Plea was not Knowingly, Intelligently and Voluntarily**
**Entered as a Result of Ineffective Assistance of Counsel**

### [1].    The Applicable Standard

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the

Supreme Court held that the two-part test set forth in *Strickland v. Washington*,

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to cases involving

guilty pleas. *United States v. Regenos*, 405 F.3d 691, 693 (8th Cir. 2005). To

prevail on a claim of ineffective assistance of counsel, Mr. Dabney must show

that his counsel's actions fell below an objective standard of reasonableness

and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Thompson*, 872 F.3d

560, 566 (8th Cir. 2017). In the context of this claim, the prejudice showing

requires that Mr. Dabney "must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and instead

would have insisted on going to trial." *Hill*, 474 U.S. at 59 (1985); *Thompson*,

6

872 F.3d at 566. The Supreme Court recently clarified that this requirement is not contingent on the defendant having a reasonable defense, or any objective likelihood of acquittal, because the error which is being remedied is the "denial of the entire judicial proceeding . . . to which he had a right." *Lee v. United States*, 137 S.Ct. 1958, 1965 (2017).

## [2]. **Deficient Performance**

Counsel was deficient for providing Mr. Dabney with a gross misrepresentation of the likely sentence he faced under the prosecution's formal plea offer. Counsel assured Mr. Dabney that he would receive a sentence of between 14 and 17 years' imprisonment if he accepted the prosecution's formal plea offer.[5] This was an obvious gross misrepresentation of both the maximum sentence Mr. Dabney would be exposed to under the

---

[5]     *See Exhibit ("EX") #1, Declaration of Randy G. Dabney, in Support of Motion to Vacate, Set Aside or Correct a Federal Sentence or Conviction Pursuant to 28 U.S.C. §2255,* ¶ 3 ("Mr. Roberts told me that he and the prosecution had calculated my guidelines range at between 14 to 17 years' imprisonment and that the prosecution will recommend a middle of the guidelines sentence due to my age. I signed the plea agreement and pleaded guilty based on this advice.") [attached to the contemporaneously submitted Motion to Expand the Record].

7

plea and the likely sentencing consequences of the plea, based on circumstances which counsel was aware of, or should have been.

Specifically, counsel was aware of Mr. Dabney's relevant criminal conduct – or was deficient for failing to conduct minimally required investigation into the same –, the fact that his advisory guideline range would be calculated based on that relevant conduct, and that he would be sentenced based upon the same. Minimally competent counsel would have recognized that Mr. Dabney's guideline range would be based on a base offense level of at least 38,[6] corresponding to the relevant conduct set forth in discovery materials available to former counsel.

From counsel's perspective at the time he advised Mr. Dabney that the plea exposed him to between 14 and 17 years' imprisonment, the readily foreseeable consequences of Mr. Dabney's plea would also include a two-level firearm enhancement,[7] and a three-level reduction for acceptance of

---

[6]     *See PSR ¶35; Addendum to PSR.*

[7]     *U.S.S.G. §2D1.1(b)(1).*

8

responsibility,[8] resulting in a total offense level of 37. At Mr. Dabney's known criminal history category of V, this triggers an advisory guideline range of imprisonment of 324 to 405 months' imprisonment. This range is roughly thirteen to twenty years greater than the exposure counsel conveyed to Mr. Dabney.[9] Counsel's gross misrepresentation of the likely sentencing consequences of the plea fell below the minimum level of competence, required of an attorney representing a criminal defendant, and was professionally unreasonable.

Persuasive precedent indicates that where the issue is whether to plead guilty or not, "the attorney has a duty to advise the defendant of the available options and possible consequences" resulting from the decision. *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1980). An attorney must advise his client of the likely sentencing consequences of any formal plea under consideration. *See United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005)

---

[8]      *U.S.S.G. §3E1.1.*

[9]      *EX #1, ¶ 3.*

9

("One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty. An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about his exposure under the sentencing guidelines is necessarily part of this process."). Failure to do so constitutes deficient performance within the meaning of the first prong of *Strickland*'s ineffective assistance of counsel test.

Counsel was also deficient for failing to provide an accurate assessment of the sentencing exposure Mr. Dabney would face under a plea versus following his conviction at trial. *See Boyd v. Waymart*, 579 F.3d 330, 353 (3d. Cir. 2009) (A defendant "cannot make a reasonably informed decision about a plea in the absence of counsel's advice about the advantages and disadvantages of the plea offer, or how it compared to the options of entering an open plea or going to trial."); *see also, Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) ("In determining whether or not to plead guilty, the defendant

should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice"). Included within the requisite knowledge counsel must convey is the comparative sentence exposure between the accused's various options. *Boyd*, 579 F.3d at 353; *see also United States v. Day*, 969 F.2d 39, 40, 43 (3d. Cir. 1992) (holding that a facially valid claim of ineffective assistance of counsel was presented by the defendant's allegations that, although his counsel informed him about a plea offer extended by the prosecutor, he did not adequately advise him about the potential sentencing implications).

### [3]. <u>Prejudice</u>

Absent counsel's misadvice, there is a reasonable probability that Mr. Dabney would have persisted in his plea of not guilty and proceeded to exercise his right to a trial by jury. Mr. Dabney only pleaded guilty as a result of counsel's misadvice which convinced him that accepting the plea would limit his likely sentence exposure to between 14 and 17 years' imprisonment.[10]

---

[10]     *EX #1, ¶3.*

Had counsel provided accurate advice – that Mr. Dabney faced a statutory maximum sentence of Life imprisonment and that based on the readily foreseeable relevant conduct and criminal history, Mr. Dabney's guidelines range would be substantially more severe than the sentencing range counsel assured Mr. Dabney he would receive – Mr. Dabney would have persisted in his plea of not guilty and proceeded to trial by jury.[11]

The huge difference between the accurate guidelines range of imprisonment which Mr. Dabney was exposed to under the plea – 324-405 months' or more – and the 14 and 17 years' imprisonment range communicated by counsel indicates a reasonable probability that absent counsel's gross misrepresentation of the sentencing consequences of the plea, Mr. Dabney would have persisted in his plea of not guilty and proceeded to trial by jury.[12]

---

[11]    EX #1, ¶4 ("Had I been accurately advised of the true range of imprisonment I faced based on the plea offer Mr. Roberts recommended I accept, I would not have accepted the plea offer and would have exercised my right to trial by jury.").

[12]    See, e.g., United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998)

12

**B.** <u>Ground Two</u>:
**Mr. Dabney was Denied the Effective Assistance of Counsel In Preparation for and During the Sentencing Hearing**

**[1].** <u>The Applicable Standard</u>

Claims of ineffective assistance of counsel must satisfy the two-prong test set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d (1984). The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id.* at 687-89. The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense *Id.* at 687. To meet this standard in the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing

---

("The fact that there is a great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney provides sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ.").

13

matters, he would have received less time in prison. *See Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

## [2].  <u>Deficient Performance</u>

Counsel was constitutionally deficient for submitting a document prepared by Mr. Dabney for counsel's review,[13] which any reasonable attorney would recognize could jeopardize Mr. Dabney's acceptance of responsibility reduction in offense level and expose Mr. Dabney to a potential obstruction of justice enhancement. Defense counsel did not discuss these obvious dangers with Mr. Dabney before submitting the document which Mr. Dabney created to communicate information he believed potentially pertinent

---

[13] *EX #1, ¶5* ("Prior to my sentencing hearing, I was not interviewed by the author of the PSR. Rather, Mr. Roberts submitted a small amount of information to the author of the PSR. After objections to the PSR were submitted, I found sample PSR questions in a book and asked Mr. Roberts why he had not asked me similar questions when he was gathering the information for the author of the PSR. I further inquired if he thought that the information sought by the questions I found would have contributed to a better PSR recommendation. He declined to comment without the seeing the questions and my answers. In response I told him that I would write out my answers and send them for his review. After receiving my answers, Mr. Roberts simply submitted them to U.S. Probation and the prosecution.").

14

to his attorney. Far from these dangers being speculative, the prosecution's response to counsel's unilateral decision to submit the document was to seek an enhancement to Mr. Dabney's sentence for obstruction of justice and to seek to deprive Mr. Dabney of any reduction in offense level for acceptance of responsibility.[14] Indeed, the document made such an impression on the prosecution that it led them to suggest that Mr. Dabney should spend the majority of the rest of his life in prison.[15]

---

[14] *See PSR Addendum, pp. 1-4* (describing the prosecution's objections to the PSR's failure to recommend an obstruction of justice enhancement and its recommendation that Mr. Dabney receive an acceptance of responsibility reduction in offense level based on the contents of the document defense counsel deficiently submitted).

[15] *DE #383, p. 24* ("AUSA Stockard: [W]hen I read someone's letter to the Court and when I listen to what somebody has to say and I think about them in terms of the 3553 factors, are they going to be a danger in the future? Are they somebody who has learned respect for the law or could learn respect for the law? Are they someone who needs to be deterred? I look for someone who understands the harm that they've caused. *Mr. Dabney's letter is excuse after excuse after excuse. So when I think about somebody like Mr. Dabney, who's making excuses,* who's shown that he's violent, has continued to get back into this life, and has done this over and over and over again, I don't have much hope that he's going to be anybody different upon release. And *I'm asking for a long sentence. It's a sentence probably that will mean he would be in prison at least for much*

15

**[3].** <u>**Prejudice**</u>

Absent counsel's deficient performance in submitting the document Mr. Dabney prepared for counsel's review, there is a reasonable probability that Mr. Dabney's sentence would have been less severe. This is true, because, although the prosecution was ultimately unsuccessful in convincing the court to withhold the 2-level reduction in offense level for acceptance[16] – and dropped its effort to convince the court to impose an obstruction enhancement in exchange for Mr. Dabney foregoing his objection to the firearm enhancement[17] – the prosecution withheld the third point for acceptance.[18]

At sentencing, this Court calculated the advisory guidelines range, applicable to Mr. Dabney as follows:

---

*of the rest of his life.*") (Emphasis added).

[16] *See DE #383, p. 16.*

[17] *See id., pp. 3-4.*

[18] *See id., p. 16.*

16

THE COURT: So in looking at the calculations, the base offense level is scored at a 38 in section 35. Two levels are added in 36 for dangerous weapon involved for an adjusted offense level of 40. The Court continues to give a two-level reduction under 3E1.1(a) but not the subsection B as reflected in 43. So the total offense level will be a 38.

\* \* \* \* \*

In adding those points up, it equals a score of 12, which yields a criminal history category of V. And when we look at the custody provisions, other than -- minimum term of imprisonment is ten years as reflected in section 126. The guideline provision will be amended. But a total offense level of 38 and a category V equates to an advisory guideline range of 360 months to life.[19]

The Court ultimately imposed sentence at the low end of that range, sentencing Mr. Dabney to 360 months' imprisonment.[20]

Had counsel not deficiently cost his client the third level off for acceptance, Mr. Dabney's total offense level would have been 37, which at his known criminal history category of V triggers a lower guideline range of 324-405 months' imprisonment. As the Court imposed a low-end sentence, there

---

[19] *See id., pp. 21-22.*

[20] *See id., p. 37.*

17

is a presumption that had that lower guidelines range applied at Mr.

Dabney's sentencing, the Court would have likely imposed the low-end of

that reduced range, 324 months. A sentence almost four years less severe than

the sentence Mr. Dabney is currently serving as a direct result of his former

counsel's deficient performance.

**C.** **Ground Three:**
**Prosecutorial Misconduct – Violation of *Brady* Mandate**

**Applicable Standard:** In Brady v. Maryland U.S. 83,87, 88 S Ct.1194, 10L. Ed

2nd 215 (1963). The United States Supreme Court held that "the suppression

of evidence favorable to the accused upon request violates due process where

evidence is material either to guilt or punishment, irrespective of the good

faith or bad faith of the prosecution." Id.

Since Brady the Supreme Court has further clarified the three elements

of a Brady violation:

1) The evidence at issue must be favorable to that accused, either because it

is exculpatory or it is impeaching.

18

2)That the evidence must have been suppressed by the prosecution either willfully or inadeptly; and

3)Prejudice must have ensued.

Sprinkler v. Greene 527 US263, 281-82, 119 S Ct 1963, 144 L. Ed. 2nd 286 (1999)

To receive a new trial based on prosecutorial misconduct," A defendant must show that the governments conduct was so improper and that it so affected the defendant substantial rights so as to deprive him of a fair trial" United States v Clayton 787F.3d.929, 933 (8th Cir. 2015) quoting United States v Hunter 770 F.3d 740, 743 (8th Cir.2014) "In assessing the prejudicial impact of the prosecutorial misconduct [the court] must consider;

1)the cumulative effect of the misconduct;

2)the strength of the properly admitted evidence;

3)the curative actions of taken by the district court"

United States v Wadington 233F.3d 1067, 1077 (8th Cir. 2000)
DARDEN v. WAINWRIGHT 477 U.S. 168, 181 (1986)
In Brady, in particular is the inclusion in the rule of "impeachment evidence", evidence that does not directly exculpate the defendant but instead merely reduces the credibility of a prosecutions witness. This type of evidence

19

falls within Brady's mandate and is important to this motion because the defendant never specifically claims factual innocence and is entitled to a 3-level reduction pursuant to the plea agreement. The defendant has only sought to support his claim of a lesser charge, role, or to support his objections to enhancements at sentencing as promised by the plea agreement.

In this case, the defendant specifically requested through his attorney that the prosecution provide requested documents and phone records in possession of the police department and officer Steve Miller, records only available through the government. And it matters not, if the request was made in general terms, not at all, or if the police had the evidence but prosecution did not know about it. The Court has held that suppression existed in all these cases, because prosecution "is a servant of the law, the two fold aim of which guilt shall not escape or innocence suffer". The court reasoned that due process requires the prosecution to provide Brady material to the defense even in the absence of a request. Kyles v. Whitley 514 U.S. 419, 438, 1995

Undoubtable, the prosecution knew or should have known of the existence of Brady materials because defense attorney John Appelquist

notified prosecution of a mitigating or minor role between April 27, 2017 and May 11 2017, and at that time offered to proffer additional relevant information. Prosecution then confirmed a mitigating or minor role "via case agent", but declined to hear the proffered additional information. The defendant then made a specific request for documents relating to informant agreements and possessed by officer Steve Miller and specific phone records possessed by the Springfield Police Department, to establish, document and support the defendants claim of a mitigating or minor role, or a lesser charge. Prosecution denied the existence of the evidence requested.

The evidence is material because after suppressing the defendants request, prosecution at sentencing called on officer Neal McAmis to testify to discredit the defendants claims of a mitigating or minor role. prosecution knew or should have known Neal McAmis was not the primary investigator and would be giving incomplete evidence and misleading the court, because prosecution had been informed between April 27, 2017 and May 11, 2017 that Officer Steve Miller was the primary investigator.

21

The error is plain and obvious and affects the defendants substantial rights. Prior to the plea agreement prosecution suppressed Brady material that would support and document the defendants claim and argument for a lesser included offense and after the plea agreement at sentencing called officer Neal McAmis to testify to the discredit of the defendants claim with incomplete testimony and without the primary officer available for cross exam and rebuttal, that would entitle the defendant to an offense level reduction.

**Prejudice**: In Brady the court held that suppression of evidence favorable to accused " violates due process, where the evidence is material to either guilt or punishment", a mitigating or minor role reduction reduces the offence level by 2-4 points and directly affects punishment considerations. In some cases the misconduct of an attorney is the prejudice.

Prosecution violated this ethical standard when prosecution declined to accept proffered relevant information by the defendant after having confirmed the existence of a mitigating or minor role, then denying the existence of official documents, violating the due process clause off the fourteenth amendment. And prosecution knew or should have known only

22

the lead investigator Steve Miller could provide the court complete and knowing testimony, after being informed by defense counsel.

Miller's absence makes prosecutions conduct unethical, improper and a cumulative effect of misconduct. The strength of the evidence is diminished in view of the incomplete testimony by prosecutions witness and the absence of complete testimony by the primary investigator involved, with no other evidence than the inflated proffer of a co- defendant trying to please the prosecutor to receive a huge time cut and the defendants own level of admission. Donnelly v. DeChristoforo 416 U.S. 637 (1974)

**Remedy**: The remedy for failure to adhere to the Brady standard is dismissal of charges or reversal of the conviction.

**Relief Requested**: Reversal of the conviction, vacate the sentence and order a new presentence investigation. Specific performance of the plea agreement.

**D.** **Ground Four**:
**Prosecutorial Misconduct – Breach of Plea Agreement**

**Applicable standard**: The U.S. Supreme Court has held, the disposition or criminal charges by agreement between the prosecutor and the accused, and

23

the adjudicative element inherit in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances, while those circumstances may vary, nevertheless a constant factor is that a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

U.S Supreme Court Digest, lawyers edition appeal and error 1692.1; criminal law 59, 60.5- plea bargaining-prosecution's breech of agreement- remand

**Review:** In the interest of justice and proper recognition of the prosecutions duties in relation to promises made in connection with any agreement on a plea of guilty require that the judgement be vacated and that the case be remanded to the courts for further consideration as to whether the circumstances require only that there be specific performance of the agreement on the plea ( in which case the defendant should be resentenced by a different judge) or petitioner should be afforded the relief the defendant seeks.

BERGER V. United States 295 U.S. 78,84 (1935)

21 Am Jur 2d Criminals law 484-489, 504-506

24

US L Ed digest, Criminal Law 59, 60.5

ALR digests, CriminalLaw145, 149.5

The elements of a breach of contract are; the existence of a contract , a breach, and damages.

It is basic to prove a breach of contract, such as a plea or analogous agreement, the existence of an underlying enforceable agreement must be shown. United States v Basin Elec. Power Co-op., 248 F. 3d 781, 810 (8th Cir. 2001).

In this case the plea agreement is well documented within the courts records, as drafted and modified by the prosecution to induce an agreement.

The plea agreement clearly identifies the parties as the United States attorneys office, represented by attorneys Tim Garrison and Josephine Stockard, and the defendant Randy Dabney, represented by Josh Roberts.(sect.1).

The plea is to be interpreted according to general contract principles and the words are to given their normal and ordinary meaning. (sect. 22).

25

The Government agreed not to bring any additional charges for any federal criminal offence related to the count of the indictment being plead guilty, and promised to relay the dis position of the case to the Webster County Prosecutors office, (who had agreed to dismiss a charge at the state level if a plea was reached in federal court) and the government retained the right to proceed with the original charges and other violations if "established by evidence" the defendant breached the plea (sect.7).

Prosecution failed to relay the disposition of the case to Webster county Prosecutors office, which resulted in the defendant being classified more harshly do to a public safety factor. The defendant endured undo hardship as a result.

The government could respond to comments made or positions taken by the defendant or his counsel, and to correct any misstatements or inaccuracies and reserved the right to make any recommendations it deemed appropriate regarding the disposition of the case subject only to the limitations set forth in the plea agreement. The United States and the

26

defendant expressly reserve the right to speak to the court at sentencing. (sect.8)

and;

The parties have no agreements regarding enhancements or reductions, except as outlined in sect.10(d).

The government did respond to comments or positions taken by the defendant or his counsel, and exercised it's right to make recommendations it deemed appropriate to the presentence report investigator for probation services but the psi investigator would not adopt the prosecutions position and called for adjudication, nor did the court adopt prosecutions position, but prosecution maintained its position and withheld 1 point for acceptance and responsibility violating section 10(d) of the plea agreement.

10(d) states the defendant admitted guilt and clearly accepted responsibility and at the time of sentencing the government will file a written motion to the court that the defendant is entitled to a 3-level reduction pursuant to 3E1.1(b) of the sentencing guidelines, unless the defendant fails to abide by the agreement or try's to withdrawal the guilty plea, violates the

27

law, or engages in conduct inconsistent with his acceptance and responsibility (9sect 10(d)).

The government agreed to ask for a sentence the does not exceed the middle of the guidelines, not object to jail credit, and the defendant agreed not to ask for a sentence below 180 months. (sect10(g)). Instead prosecution asked for "no reductions and a very long sentence that is most of the rest of the defendants life.

The defendant agrees to Judicial fact-finding by preponderance of evidence for all issues pertain to the determination of the sentence (including facts that support any specific offense characteristic or other enhancement or adjustment (sect. 10(h)).

The court asked no fact finding questions.

The parties acknowledge and agree that there are no agreements between parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and it's subsections. As to guideline issues the parties are free to advocate their respective positions at the sentencing hearing. (section 11).

28

The defendant was threatened with additional enhancements and life in prison by prosecution if he voiced objections to the enhancement.

The error is plain and obvious and affects the defendants substantial rights. Many of the promises made by prosecution were not fulfilled and without cause. The defendant had acted within his rights to communicate his issues and position on enhancements or reductions with his attorney and the court. No violation established by evidence exists or that the defendant "willfully" engaged in obstruction of justice.

**Prejudice**: The defendant was entitled to a third point reduction of the offense level reducing the Sentencing Guidelines to 327-405 months! And the defendant was subjected to endure hardships within the Bureau of Prison's through increased security measures and housing in a more restrictive facility.

**Relief sought**: Vacate the sentence and remand to district court for new presentence investigation and specific performance of plea before a different court. Evidentry Henring

29

## V. Prayer for Relief

Mr. Dabney's plea was entered as a result of ineffective assistance of counsel and is therefore neither knowing or voluntary. *See e.g., Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Moreover, a conviction obtained by such plea must be reversed. *See e.g., Hill v. Lockhart,* 474 U.S. 52 (1985). The Supreme Court recently clarified that this requirement is not contingent on the defendant having a reasonable defense, or any objective likelihood of acquittal, because the error which is being remedied is the "denial of the entire judicial proceeding . . . to which he had a right." *Lee v. United States,* 137 S.Ct. 1958, 1965 (2017).

Mr. Dabney was deprived of rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution in connection with his plea in this case. Mr. Dabney seeks to vindicate those rights in this Court. Mr. Dabney has established entitlement to, and respectfully requests vacation of his conviction and sentence, as the remedy for his ground one claim.

30

Mr. Dabney has also been deprived of his right to the effective assistance of counsel in connection with sentencing in the underlying criminal proceeding. He is entitled to and seeks resentencing with the effective assistance of counsel and with the third level off for acceptance as would have occurred, but for the deficient performance of his former counsel, as the remedy for his ground two claim.

Respectfully submitted this 3 day of October , 2023.

Mr. Randy G. Dabney, *Pro Se*
No. 17642-045
MCFP Springfield
Post Office Box 4000
Springfield, MO 65801

31

## VI. Verification

I, Randy G. Dabney, verify under penalty of perjury, pursuant to 28

U.S.C. § 1746 that the foregoing is true and correct. Executed this _3_ day of

_October_ , 2023.

_Randy Dabney_
Mr. Randy G. Dabney, *Pro Se*
No. 17642-045
MCFP Springfield
Post Office Box 4000
Springfield, MO 65801

32

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT SPRINGFIELD

| | | |
|---|---|---|
| RANDY G. DABNEY, | ) | |
| | ) | |
| Movant, | ) | USDC Case No. 6:23-cv-____ |
| | ) | |
| v. | ) | |
| | ) | USDC Case No. 6:17-cr-03007-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Hon. Roseann A. Ketchmark |
| Respondent. | ) | United States District Judge |

## MOTION TO EXPAND THE RECORD

COMES NOW RANDY G. DABNEY, Movant *pro se,* in the above styled

and numbered cause, and respectfully moves this Honorable Court to expand

the record to include the declaration attached to this motion, pursuant to Rule

7 of the Rules Governing Section 2255 Proceedings for the United States

District Courts.

Respectfully submitted, this ___3___ day of __October__, 2023.

_____

Randy G. Dabney, *Pro Se*
No. 17642-045
MCFP Springfield
Post Office Box 4000
Springfield, MO 65801

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
AT SPRINGFIELD

| | | |
|---|---|---|
| RANDY G. DABNEY, | ) | |
| | ) | |
| Movant, | ) | USDC Case No.  6:23-cv-____ |
| | ) | |
| v. | ) | |
| | ) | USDC Case No.  6:17-cr-03007-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Hon. Roseann A. Ketchmark |
| Respondent. | ) | United States District Judge |

## DECLARATION OF RANDY G. DABNEY IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255 (EXHIBIT #1)

I, RANDY G. DABNEY, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1.     I am the same Randy G. Dabney who was the defendant in the above entitled criminal case, pled before this court, and who is movant in the proceeding under 28 U.S.C. §2255 which is being instituted by the motion this declaration supports.

2.     My representation in this case was as follows: 1) I was represented from February 16, 2017 through February 21, 2017 by AFPD Ann M. Koszuth, Hammons Tower, 901 East Saint Louis Street, Suite 801, Springfield, MO 65806; 2) From February 21, 2017 through September 17, 2018, I was represented by John F. Applequist, 313 South Glenstone Avenue, Springfield, MO 65802; 3) From September 17, 2018 through November 7, 2018, I was represented by AFPD Brian David Risley, Hammons Tower, 901 East Saint Louis Street, Suite 801, Springfield, MO 65806; and 4) From November 7, 2018 through my plea hearing and sentencing in this court and on direct appeal to the United States Court of Appeals for the Eighth Circuit, I was represented by Joshua K. Roberts, 2202 W. Chesterfield Blvd., Suite 100, Springfield, MO 65807.

3.     Mr. Roberts told me that he and the prosecution had calculated my guidelines range at between 14 to 17 years' imprisonment and that the prosecution will recommend a middle of the guidelines sentence due to my age. I signed the plea agreement and pleaded guilty based on this

advice.

4.     Had I been accurately advised of the true range of imprisonment I faced based on the plea offer Mr. Roberts recommended I accept, I would not have accepted the plea offer and would have exercised my right to trial by jury.

5.     Prior to my sentencing hearing, I was not interviewed by the author of the PSR. Rather, Mr. Roberts submitted a small amount of information to the author of the PSR. After objections to the PSR were submitted, I found sample PSR questions in a book and asked Mr. Roberts why he had not asked me similar questions when he was gathering the information for the author of the PSR. I further inquired if he thought that the information sought by the questions I found would have contributed to a better PSR recommendation. He declined to comment without the seeing the questions and my answers. In response I told him that I would write out my answers and send them for his review. After receiving my answers, Mr. Roberts simply submitted them to U.S.

3

Probation and the prosecution.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___3___ day of ___October___, 2023.

_Randy Dabney_

Randy G. Dabney, *Pro Se*
No. 17642-045
MCFP Springfield
Post Office Box 4000
Springfield, MO 65801

4